**STATE of Missouri, Respondent,**

v.

**Michael WHITE, Appellant.**

**No. WD 31775.**

Missouri Court of Appeals,
Western District.

March 30, 1982.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied May 4, 1982.

Application to Transfer Denied June 14, 1982.

James W. Fletcher, Public Defender, Gary L. Gardner, Asst. Public Defender, Kansas City, for appellant.

John Ashcroft, Atty. Gen., Brian P. Seltzer, Asst. Atty. Gen., Jefferson City, for respondent.

Before NUGENT, P. J., and TURNAGE and LOWENSTEIN, JJ.

NUGENT, Presiding Judge.

Michael White appeals a judgment of conviction based on a jury verdict finding him guilty of burglary first degree, § 569.-160 [1], with a punishment of nine years, stealing over $150, § 570.030, with a punishment of one year, and rape, § 566.030, with a punishment of fifteen years, those terms of imprisonment to be served consecutively to one another. White was also convicted of armed criminal action, § 571.015.1, with a sentence of twenty years to be served concurrently with the three consecutive sentences. We affirm in part and reverse in part.

---

1. All sectional references are to Revised Statutes of Missouri, 1978.

In the early morning hours of July 4, 1979, Ethel McGee and Betty McGee, attendants at the Midtown Manor Nursing Home, were surprised by two men, White and his accomplice, who had ripped open the back screen door of the home. White, holding a knife, took Ethel McGee's pocketbook and told her to walk with her head down to the shower room where he took her rings and raped her.

At 3:53 a.m. that morning, Police Officer George Winger was dispatched to the nursing home where he met Officer James Sola. Noting that the screen door was ripped and unlocked, the officers entered the home and discovered White's accomplice carrying a television set. They chased him into an office where they found White, various items belonging to Ethel McGee and a knife which Ms. McGee identified as being the one carried by White. Officer Winger then found Ethel McGee lying on the floor of a shower room. White was charged in a four count information with first degree burglary, stealing, rape, and an armed criminal action (burglary with the aid of a dangerous instrument).

On appeal, White does not challenge the sufficiency of the evidence to convict him. He contends that the trial court erred in failing to quash the jury panel at the close of voir dire and with failing to declare a mistrial after Officer Winger's testimony, in admitting certain testimony of a medical records custodian, in the giving of certain verdict directing instructions, and in the sentencing.

We infer from the record what it does not explicitly disclose: before trial the court excluded reference to or testimony about the rape of the other victim, Betty McGee. During the course of the voir dire the prosecutor said, "Another lady at the scene of this crime was a Betty McGee". At the close of the voir dire, defendant moved to quash the venire because of the prosecutor's remark. In overruling that motion the court said:

> THE COURT: ... The only thing that I instructed the prosecutor was because of your concern about the other lady having been raped and you are pointing out to me that it was your information that the rape occurred in another room and not in the area where the victim in this case was raped. That I was instructing Mr. Stigall before he would proceed to offer any evidence, offer any argument, to that effect as to the rape itself, that he should present me some law on that matter. And I would like to see some law from both of you on that. A very good argument can be made that the fact that they were in separate rooms or not, would be part of the res gestae and each would be liable for whatever the other did. However, I have as an overabundance of caution, I have instructed Mr. Stigall not to refer to the other rape until I get some law from both of you on the subject.

Before Officer Winger testified, the prosecutor instructed him not to refer to the other victim. Nevertheless, in response to the prosecutor's question about what he had done after finding Ethel McGee at the scene of the rape, he said, "I re-entered the office area where Officer Sola and the two suspects were. I informed him instead of a burglary, we had two rapes." White's motion for a mistrial again based on the pretrial order, was overruled with an instruction to the jury to disregard the testimony. White now argues that he was prejudiced by the combination of Officer Winger's answer and the prosecutor's voir dire statement in that the jury could infer that White had also raped Betty McGee and that he was charged with that offense.

■ The control of the voir dire examination is within the discretion of the trial court and the appellate court will interfere only when the record manifests an abuse of that discretion. *State v. Mudgett*, 531 S.W.2d 275, 279 (Mo.1975) (en banc). Likewise, this court in *State v. Walker*, 531 S.W.2d 55, 57 (Mo.App.1975), held that when a witness unexpectedly volunteers some inadmissible statement the nature of the remedial action is within the discretion of the trial court. In *Anderson v. Robertson*, 402 S.W.2d 589, 593 (Mo.App.1966), the

court noted that "judicial discretion is abused when a trial court's ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." Under this standard we find no abuse in the instant case.

Moreover, we do not find that the logical inference from the two statements is that White raped Betty McGee or that he was charged with doing so. The evidence was that two men were involved in the criminal venture which included burglary, stealing and rape. Betty McGee was only identified as being at the scene. If the jury inferred anything from the statements, that inference more logically would have been that, if Betty McGee was also raped within a short time span, White's accomplice was her rapist. Even for one "young and lusty as an eagle" [2], obvious biological impediments almost compel that conclusion.

■ White also complains of error in the admission of the following testimony of the medical records custodian:

Q. (By Mr. Stigall) Now, referring to page 2 of this medical repot [sic], can you tell us what that shows? What is that page two there?

A. This is the doctor's written report of the examination of the patient.

Q. Was there any history given?

A. Yes, there is.

Q. What is that?

A. You would like me to read it?

Q. Yes.

A. "Allegedly assaulted by a black male 'young kid', threatened with a knife—"

MR. BROWN: Your Honor, I object to this as being hearsay.

THE COURT: Overruled.

Q. (By Mr. Stigall) You can go on.

A. "Put it to her throat. Vaginal intercourse only. Last menstral [sic] period, 7/1/79. Not contraceptives. Last intercourse two to three weeks ago."

White argues that the medical history is hearsay and prejudicial to him in that the inflamed jury could infer that the victim was not sexually active and that impregnation could result from the rape.

The hospital records were admitted under the Uniform Business Records as Evidence Act, §§ 490.660–490.690. White waived identification of the exhibit but reserved any objections to matters to be offered. Even assuming that defendant's objection at trial was addressed to the reading of the matter which followed rather than to the preceding answer about the "young kid" threatening "with a knife", the entire statement was admissible as a patient's history necessary to observation, diagnosis and treatment and essential to the examination and care of the patient. *State v. Foster*, 501 S.W.2d 33, 36 (Mo.1973); *Melton v. St. Louis Public Service Co.*, 363 Mo. 474, 251 S.W.2d 663, 671 (1952) (en banc).

Although at best he objected at trial to the records only as hearsay, White further argues on appeal that they were inflammatory. We disagree. The statement indicates that the victim had recently engaged in intercourse so that the jury could have inferred that she was sexually active. Moreover, an obvious possibility in most rapes is that the victim may be impregnated.

■ White's next point is that plain error resulted because the jury verdict directing instructions did not instruct the jury that the statutes authorized a fine or a combination of a fine and a term of imprisonment, thereby failing to comply with § 557.036.2. This argument was recently rejected in *State v. Van Horn*, 625 S.W.2d 874, 877 (Mo.1981), and has no merit.

■ White's remaining points concern error in sentencing him for both burglary first degree and armed criminal action. In *State* ex rel. *Westfall v. Ruddy*, 621 S.W.2d 42, 45 (Mo.1981) (en banc), the court held that:

Assuming that the evidence in the case supports both crimes, the court may in-

2. The Prayer Book, 1662 Rev., Psalm 103:5.

struct on both armed criminal action and the underlying felony; however, the jury may convict of only one of them pursuant to § 556.041(1). This means that the jury must be instructed that, while they are not required to convict of any offense, that these two offenses are submitted in the alternative and the jury may not convict the defendant of more than one of them.

Therefore, White's argument is correct and the armed criminal action conviction must be reversed. *See State v. Kane,* 629 S.W.2d 372 (Mo.1982) (en banc).

For the foregoing reasons, we affirm the burglary first degree, stealing, and rape convictions but remand the case to the trial court with directions to vacate the judgment and sentence in the armed criminal action count, Count IV.

All concur.